## IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF ARKANSAS
## NORTHERN DIVISION

**COREY JONES**                                                    **PLAINTIFF**

**V.**                                    **NO. 3:22-CV-00091-JTK**

**SOCIAL SECURITY ADMINISTRATION**                    **DEFENDANT**

## ORDER

### I.  Introduction:

Plaintiff, Corey Jones ("Jones"), applied for child's disability insurance benefits on October 7, 2019, alleging a disability onset date of January 1, 2017. (Tr. at 10-12). For this type of claim, the claimant must establish disability between 18 and 22 years of age. 20 CFR §§ 404.350(a) and 404.351. Jones was born on June 13, 1997, and attained age 18 on June 12, 2015. (Tr. at 10-12).

Jones's claim was denied initially and upon reconsideration. *Id*. After conducting a hearing, the Administrative Law Judge ("ALJ") denied Jones's application on January 20, 2021. (Tr. at 20). The Appeals Council denied his request for review. (Tr. at 1-4). The ALJ's decision now stands as the final decision of the Commissioner, and Jones has requested judicial review.

For the reasons stated below, the Court [1] affirms the decision of the

---

[1] The parties have consented in writing to the jurisdiction of a United States Magistrate Judge.

Commissioner.

## II.   <u>The Commissioner's Decision</u>:

The ALJ found that Jones had not engaged in substantial gainful activity since June 12, 2015.[2]  (Tr. at 12). The ALJ next found that, prior to attaining age 22, Jones had the following severe impairments: generalized anxiety disorder, attention deficit disorder, depression, mood disorder, and autism spectrum disorder. (Tr. at 13).

The ALJ found that, prior to attaining age 22, Jones's impairments did not meet or equal a listed impairment. (Tr. at 13-15). Next, the ALJ determined that, prior to attaining age 22, Jones had the residual functional capacity ("RFC") to perform work at all exertional levels, with additional nonexternal limitations. He could make simple work-related decisions; maintain concentration, persistence, and pace for simple tasks; understand, carry out, and remember simple instructions and procedures; adapt to changes in the work setting that are simple, predictable, and easily explained; and have occasional and superficial interaction with coworkers, supervisors, and the public. (Tr. at 15).

Based on Jones's RFC and work experience, the ALJ found that Jones was

---

[2] The ALJ followed the required five-step sequence to determine: (1) whether the claimant was engaged in substantial gainful activity; (2) if not, whether the claimant had a severe impairment; (3) if so, whether the impairment (or combination of impairments) met or equaled a listed impairment; (4) if not, whether the impairment (or combination of impairments) prevented the claimant from performing past relevant work; and (5) if so, whether the impairment (or combination of impairments) prevented the claimant from performing any other jobs available in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(a)-(g), 416.920(a)-(g).

unable to perform any past relevant work, prior to attaining age 22. (Tr. at 18). Relying on the testimony of a vocational expert ("VE"), the ALJ found that, prior to attaining age 22, Jones was capable of performing jobs in the national economy, such as poultry dresser and heavy cleaner. (Tr. at 19). Therefore, the ALJ found that Jones was not disabled. *Id.*

**III.   Discussion:**

A.   Standard of Review

The Court's function on review is to determine whether the Commissioner's decision is supported by substantial evidence on the record as a whole and whether it is based on legal error. *Miller v. Colvin*, 784 F.3d 472, 477 (8th Cir. 2015); see also 42 U.S.C. § 405(g). While "substantial evidence" is that which a reasonable mind might accept as adequate to support a conclusion, "substantial evidence on the record as a whole" requires a court to engage in a more scrutinizing analysis:

> "[O]ur review is more than an examination of the record for the existence of substantial evidence in support of the Commissioner's decision; we also take into account whatever in the record fairly detracts from that decision." Reversal is not warranted, however, "merely because substantial evidence would have supported an opposite decision."

*Reed v. Barnhart*, 399 F.3d 917, 920 (8th Cir. 2005) (citations omitted).

In clarifying the "substantial evidence" standard applicable to review of

administrative decisions, the Supreme Court has explained: "And whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence . . . 'is more than a mere scintilla.'" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consolidated Edison Co. v. NLRB*, 59 S. Ct. 206, 217 (1938)). "It means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id*.

B. Jones's Arguments on Appeal

Jones contends that the evidence supporting the ALJ's decision is less than substantial. He argues that that ALJ did not properly consider either Jones's stepmother's testimony or the opinion of Jones's treating PCP.

At the hearing, Jones's stepmother testified that Jones was intelligent but had trouble focusing and needed reminders. (Tr. at 16, 47-52). She said that sometimes he felt sad and would shake when overwhelmed. *Id*. She said that Jones could not be left unsupervised and could not work. *Id*.

The record shows otherwise. Jones worked during the relevant time-period at Arkansas State University.[3]  (Tr. at 18, 32-36). He had completed high school and

---

[3] Working generally demonstrates an ability to perform a substantial gainful activity, and it is inconsistent with complaints of disabling conditions. *Naber v. Shalala*, 22 F.3d 186, 188-89 (8th Cir. 1994).

received an associate's degree. *Id*. Jones could prepare simple meals, perform household chores, drive, shop, pay bills, and play high school basketball.[4] (Tr. at 39-45, 281-291). Also, Jones was not always compliant with taking prescription medication as his doctor prescribed. (Tr. at 16). When he did not take it, he felt worse mentally, but when he restarted it, he felt improved.[5] *Id*. This contradicts Jones's stepmother's opinion. The ALJ discussed Jones's stepmother's testimony, and based on the other record evidence, he properly found that Jones was not as limited as alleged.[6]

Next, Jones argues that the ALJ did not properly evaluate the opinion of Dr. M. Shane Lyerly, M.D., who was Jones's PCP.[7]  On February 7, 2020, Dr. Lyerly

---

[4] Such daily activities undermine his claims of disability. *Edwards v. Barnhart*, 314 F.3d 964, 967 (8th Cir. 2003).

[5] A failure to follow a recommended course of treatment weighs against a claimant's credibility. *Guilliams v. Barnhart*, 393 F.3d 798, 802 (8th Cir. 2005).

[6] An ALJ need not explicitly discuss why he discredits a lay person's observations or testimony. See *Buckner v. Astrue*, 646 F.3d 549, 559 (8th Cir. 2011).

[7] On January 28, 2017, the Administration promulgated new regulations governing how ALJs assess medical opinion evidence. The new rules, with an effective date of March 27, 2017, focus on whether an opinion is persuasive, based on: (1) supportability; (2) consistency with the evidence; (3) relationship with the claimant [which includes; (i) length of treatment relationship; (ii) frequency of examinations; (iii) purpose of the treatment relationship; (iv) extent of the treatment relationship; and (v) examining relationship]; (4) provider specialization; and (5) any other important factors. See 20 C.F.R. § 404, 1520c(a)-(c)(2017). An opinion is more persuasive if it is consistent with and supported by the medical evidence as a whole. 20 C.F.R. § 416.920c(c)(1-2) (2017); *Bonnett v Kijakazi*, 859 Fed. Appx. 19 (8th Cir. 2021); *Phillips v. Saul*, No 1:19-CV-00034-BD, 2020 U.S. Dist. LEXIS 110370 at *4 (E.D. Ark. June 24, 2020). An ALJ must give good reasons for his findings about an opinion's persuasiveness. *Id*.

expressed an opinion that Jones would have moderate to extreme mental functional limitations and that he would miss more than 3 days of work per month. (Tr. at 376-378). The ALJ explained, however, that Dr. Lyerly's own notes showed that Jones improved with medication and had greater motivation when following treatment protocols. (Tr. at 16-17). For example, in December 2017, Dr. Lyerly wrote that Jones "reports that he does very well and is able to maintain focus while at home and school. (Tr. at 273). For this reason, the ALJ found that Dr. Lyerly's opinion was unsupported by his own notes. (Tr. at 17). The ALJ also wrote that Dr. Lyerly's opinion of serious limitations was inconsistent with the remaining evidence in the record showing Jones's ability to complete many mental functions, including working during the relevant time-period. *Id.* The ALJ fully discussed Dr. Lyerly's opinion and properly found the opinion to be unpersuasive. *Id.*

## IV.   <u>Conclusion</u>:

There is substantial evidence to support the Commissioner's decision to deny benefits. The ALJ properly considered witness testimony and the opinion of Jones's

---

ALJs are required to explain their decisions as to the two most important factors: supportability and consistency. 20 C.F.R. 404.1520(b)(2). These requirements are meant to provide individuals with a better understanding of the Commissioner's decision and provide sufficient rationale for a reviewing adjudicator or court. *Phillips, supra*; Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 FR 5844-01 at 5854, 5858 (January 18, 2017).

PCP. The finding that Jones was not disabled within the meaning of the Social Security Act, therefore, must be, and hereby is AFFIRMED. Judgment will be entered for the Defendant.

IT IS SO ORDERED this 1st day of March, 2023.

_____
UNITED STATES MAGISTRATE JUDGE